UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE H. BUTLER,

                Petitioner,            Case Number 19-10677

v.                                     Honorable David M. Lawson

NOAH NAGY,

                Respondent,

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

An Oakland County, Michigan jury convicted petitioner Bruce Butler of first-degree premeditated murder in the shooting death of Michael Khmoro, a liquor store owner, with whom he previously had a dispute over a lottery ticket. Butler was sentenced to life in prison without the possibility of parole. All of his state court appeals and requests for post-conviction relief were denied, and he has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, without the assistance of an attorney. Butler alleges several constitutional violations that led to his conviction. However, the state courts' resolution of those claims did not contravene or unreasonably apply federal constitutional law as determined by the Supreme Court. The petition will be denied.

I.

Butler was charged with first-degree murder and a firearm offense, and his first trial ended in a mistrial when the jury was unable to reach a unanimous verdict. There were no eyewitnesses to the shooting, but the state presented a compelling circumstantial case. The facts that came out at the second trial were summarized by the Michigan Court of Appeals on Butler's direct appeal as follows:

> Defendant's convictions arose from the October 6, 2010, shooting death of Michael Khmoro, a liquor store owner in Southfield, Michigan. Khmoro was shot and killed

during the afternoon, as he was taking the trash from his store to an outside dumpster. Several months after the shooting, defendant's brother-in-law, Andrew Roberts, brought a gun to the Southfield Police Department. Roberts testified that defendant called him on the day of the shooting and asked to meet. According to Roberts, when they met the next day, defendant gave Roberts a gun that he had inherited from his father and said he wanted to get rid of it. When Roberts asked defendant whether anyone had been killed with the gun, defendant became emotional and confessed to killing Khmoro, but stated that his intent was to kill Khmoro's brother, apparently over a dispute involving a lottery ticket. Video surveillance equipment recorded that the shooter drove a black Buick Envoy, the same type of vehicle that defendant's wife drove. Roberts urged defendant to tell his wife and the police about the shooting. Defendant never did so, and Roberts eventually turned the weapon over to the police. A firearms expert determined that the weapon had fired the bullets that were removed from Khmoro's body.
. . .

At trial, the victim's brother and a co-owner of the liquor store, Mark Khmoro, testified that he and defendant got into an argument about five or six months before the shooting, when defendant accused Mark Khmoro of stealing a winning lottery ticket. After defendant was arrested, Mark Khmoro identified defendant in a photographic lineup.

*People v. Butler*, No. 319548, 2015 WL 5057404, at *1 (Mich. Ct. App. Aug. 27, 2015). The state also offered evidence obtained from Butler's cell phone carrier that the cell-site location data placed the cell phone in the area of the liquor store around the time of the shooting.

Butler's life-without-parole prison sentence was mandated by Michigan law. Mich. Comp Laws § 750.316. His conviction was affirmed by the Michigan Court of Appeals on direct appeal, *Butler*, 2015 WL 5057404, and the state supreme court denied leave to appeal, 499 Mich. 915, 877 N.W.2d 893 (2016) (mem.).

In 2017, Butker filed a post-conviction motion for relief from judgment, which was denied by the trial court. *People v. Butler,* No. 11-237958-FC (Oakland Cnty. Cir. Ct. July 24, 2017) (ECF No. 22-38). The Michigan Court of Appeals denied leave to appeal. *People v. Butler*, No. 342063 (Mich. Ct. App. May 31, 2018). While Butler's application for leave to appeal was pending in the Michigan Supreme Court, the United States Supreme Court released its decision in

*Carpenter v. United States*, 585 U.S. 296 (2018), which held that acquisition of a person's cell-site location information is a search that generally requires the government to obtain a warrant supported by probable cause before obtaining such records. Butler filed a motion in the Michigan Supreme Court to add an issue based on *Carpenter*. The Michigan Supreme Court granted his motion to add the issue, but it denied the application for leave to appeal. *People v. Butler*, 503 Mich. 946, 922 N.W.2d 365 (2019) (mem.).

Butler then filed his petition for writ of habeas corpus. The case was held in abeyance so that the petitioner could properly exhaust his *Carpenter* claim in the state courts. *Butler v. Parrish*, No. 19-10677, 2019 WL 1515266 (E.D. Mich. Apr. 8, 2019).

The petitioner filed a second post-conviction motion for relief from judgment, which was denied by the trial court. *People v. Butler,* No. 11-237958-FC (Oakland Cnty. Cir. Ct. Oct. 15, 2019) (ECF No. 22-42). The Michigan appellate courts denied leave to appeal. *People v. Butler,* No. 353475 (Mich. Ct. App. June 3, 2020); *lv. den.* 507 Mich. 868, 953 N.W.2d 420 (2021) (mem.).

This Court subsequently reopened the case and permitted the petitioner to file an amended habeas petition. He presents eight issues, which he has formed in the language that he used in the state courts:

> I. The trial court should have suppressed the photo lineup of the Defendant — the lineup was conducted once the Defendant was in custody and the State's only justification was that the victim's family wanted to see the Defendant at his district court arraignment — a crime victim's right to presence is not absolute and a criminal Defendant should not be subject to an unreliable identification procedure simply so that a crime victim can attend a ministerial hearing — the police's decision to hold this show-up violated the Defendant's due process rights.
>
> II. The trial court committed reversible error in barring the rebuttal defense firearm expert who would have negated the People's firearm testimony — the failure to allow such testimony deprived the Defendant of his constitutional right to present a defense.

- 3 -

III. The trial court should find that Mr. Niskar should have prepared an anticipatory report concerning the nature of Steve Howard's expert testimony — Mr. Niskar was ineffective in refusing to prepare the report required by the judge in the prior issue.

IV. The prosecution improperly introduced the testimony of Stacy Matthews and Ray Roberts as prior consistent statements to bolster the testimony of Andrew Roberts — this erroneous ruling deprived the Defendant of his constitutional right to due process of law.

V. The Court of Appeals abused it's [sic] discretion in denying the Defendant's motion to add an issue and to grant a remand where the defense counsel uncovered evidence suggesting the State's historical cellular data analysis was flawed and the validity of the same could be resolved by obtaining several business records from ATT and Sprint — the cellular providers used by the Defendant and the State's leading witness.

VI. The Defendant was deprived of both his state and federal constitutional rights of the due process clause where the prosecution solicited fabricated testimony from bias [sic] witnesses that there was no monetary gain as a motive to testify against Defendant on a unsubstantiated claim that the victim was killed by Defendant as a result of a theft of a lottery ticket in the first trial that resulted in a mistrial then in the second trial the State claimed to have the murder weapon and the vehicle the Defendant was identified driving on video the day of the killing to gain a unjust conviction.

VII. The Defendant was denied his Sixth and Fourteenth Amendment rights to due process and the effective assistance of counsel where trial counsel failed to investigate evidence supporting Defendant's alibi defense, for failure to call alibi witnesses, for failing to obtain identification expert who would have testified that the surveillance video was not clear enough to identify anyone.

VIII. Was a search warrant required for AT&T prior to Defendant's (CSLI) cell-site location information being introduced at trial in violation of the 4th Amendment rights — was authentication from AT&T required in violation of Defendant's constitutional rights under the 4th Amendment with both issues affecting Defendant's due process rights under the State and Federal U.S. Const. Ams, VI, XIV; Const. 1963 Art 1 § 20 — alternatively trial & appellate counsel were ineffective for not challenging the CSLI information

Pet. at 1-6, ECF. No. 1, PageID.1-6, Am. Pet. at 2, ECF No. 13, PageID.80.

The warden responded that some of Butler's claims are procedurally defaulted and that all his claims are meritless. The "procedural default" argument is a reference to the rule that the

petitioner did not preserve properly some of his claims in state court, and the state court's ruling on that basis is an adequate and independent ground for the denial of relief. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). But the Court finds it unnecessary to address the procedural question, because it is not a jurisdictional bar to review of the merits, *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005), and "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits," *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). The procedural defense will not affect the outcome of this case, and it is more efficient to proceed directly to the merits.

II.

Certain provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). The AEDPA provides a "highly deferential standard for evaluating state-court rulings[.]" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). That means federal courts give the state court "the benefit of the doubt," *ibid.*, applying that "statutorily prescribed deference," *Michael v. Butts*, 59 F.4th 219, 225 (6th Cir. 2023) (citing 28 U.S.C. § 2254(d); *English v. Berghuis*, 900 F.3d 804, 811 (6th Cir. 2018)).

A federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

- 5 -

presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) (quotation marks omitted)).

## A.

It appears that when Butler was arrested, the police assembled a photographic array to display to Mark Khmoro, the victim's brother, to see if Khmoro could identify Butler as the person with whom he had the argument about the lottery ticket. Butler argues that Khmoro's identification of him should have been suppressed because he was in custody at the time, a corporeal lineup should have been conducted, and the photo array was displayed without Butler having an attorney.

Michigan identification jurisprudence favors corporeal lineup identification procedures over photo arrays when a suspect is in custody. *See People v. Anderson,* 389 Mich. 155, 186-87, 205 N.W.2d 461, 476 (1973), *overruled in part on other grounds by People v. Hickman,* 470 Mich. 602, 611, 684 N.W.2d 267, 272 (2004). The Michigan Court of Appeals acknowledged that state court rule, but it held that a photo array was justified by the circumstances of the case. *Butler*,

- 6 -

2015 WL 5057404, at *2.  The state court's decision was reasonable and well supported, but even if it were not, habeas relief would not be available.  The Court may not grant the writ of habeas corpus on the basis of a perceived error of state law.  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

The Michigan Court of Appeals also held that under federal law, Butler was not entitled to an attorney at the identification stage of the case.  *Butler*, 2015 WL 5057404, at *1.  The court was correct.  A pretrial photographic identification is not a critical stage under the Sixth Amendment at which counsel is required to be present.  *United States v. Ash*, 413 U.S. 300, 321 (1973); *Van v. Jones*, 475 F.3d 292, 311 (6th Cir. 2007).  A criminal defendant has no federal constitutional right to have counsel present at an investigative photographic identification procedure at which he is identified.  *Hanks v. Jackson*, 123 F. Supp. 2d 1061, 1071 (E.D. Mich. 2000); *see also Payne v. Smith*, 207 F. Supp. 2d 627, 645 (E.D. Mich. 2002) (explaining that the Sixth Amendment does not guarantee the accused the right to counsel at a photographic array).  The absence of counsel at the photographic identification lineup does not entitle Butler to relief.

Finally, the Due Process Clause protects the accused against the introduction of evidence that results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977).  However, Butler does not contend here that the photo array was suggestive, and the state court determined that the procedure did not give rise to a substantial likelihood of misidentification.  *Butler*, 2015 WL 5057404, at *2 n.2.

B.

Butler argues next that his constitutional right to present a defense was abridged when the trial court barred a defense firearms expert from testifying for him.  The judge precluded the witness from testifying because the defense, despite several opportunities, failed to present to the prosecution a report or other written summary of the proposed expert witness's testimony, as

- 7 -

required by Michigan's procedural rule, Michigan Court Rule 6.201(A)(3).  The witness, Steven Howard, was intended to address the state's ballistics evidence that matched the slugs recovered from the victim's body to a pistol that Butler possessed and gave to his brother-in-law, who turned it over to the police.

Michigan's Rule 6.201(A) specifies the disclosure of evidence both sides must make in a criminal case.  For expert witnesses, the rule requires a party to furnish "either a report by the expert or a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion."  Mich. Ct. R. 6.201(A)(3).  The disclosure requirement is triggered by a "request," and the response must be made 21 days thereafter.  Mich. Ct. R. 6.201(A), (F).

Here, the record suggests that the prosecutor made "multiple requests" for Steven Howard's information, which were met with the "defendant's repeated failure to comply." *Butler*, 2015 WL 5057404, at *5, 2.  The trial judge allowed the defendant several opportunities to conform.  Eventually, the defense sent the following letter to the prosecutor:

> Based upon Mr. Howard's review of discovery provided to the defense by the Oakland County Prosecutor's Office, along with his academic, work experience and qualifications, we believe that his testimony will assist the jury in understanding scientific, specialized and technical knowledge relevant to this criminal case.
>
> Based upon our discussions with Mr. Howard, we believe that the following is an accurate summary of testimony under Michigan Rule of Evidence 702, 703, and 705 during the defense's case in chief at trial.
>
> (1) The witness will describe the design, production, manufacturing and operation of firearms. The tooling and machining behind gun manufacturing will be explained. This includes dates of manufacturing and firearm models/types.
>
> (2) The witness will describe the design, production, manufacturing and operation of firearm ammunition. The materials used in manufacturing ammunition will also

be explained. This includes the dates of manufacturing and ammunition models/types.

(3) The witness will testify to matters relating to ammunition components, trajectory and ballistics.

(4) The witness will testify to shooting reconstruction, ammunition identification and bullet, cartridge, and cartridge-bullet aging analysis.

(5) The witness will testify to the identification of bullets and bullet fragmentation.

*Id.* at * 4.  The trial judge deemed this disclosure inadequate and exercised her prerogative under the state's procedural rule to preclude the defense from calling the witness.  *See* Mich. Ct. R. 6.201(J).

The Michigan Court of Appeals agreed that the disclosure was inadequate.  The court reasoned that "[t]he 'summary' referenced the general subjects of firearms, ammunition, and firearms testing, but provided no indication of the substance of any proposed testimony related to those subjects and did not offer any opinions by Howard regarding the general matters identified." *Butler*, 2015 WL 5057404, at *4.  The court also held that barring the expert from testifying did not violate Butler's federal constitutional right to present a defense.  *Id.* at *5.

The state courts' decisions reasonably applied federal constitutional law.  In *Taylor v. Illinois*, 484 U.S. 400 (1988), the Supreme Court recognized that an accused has a fundamental right to present witnesses in his own defense under the Sixth Amendment.  But the right is not unfettered.  "The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Rock v. Arkansas*, 483 U.S. 44, 55 (1987) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)) (quotation marks omitted).  The right is subject to "rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case."

- 9 -

*Taylor*, 484 U.S. at 411.  "The trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony."  *Ibid.*  The *Taylor* Court expressly recognized the salutary purposes served by disclosure rules.  In that case, the rule at issue required a notice of an alibi witness.  Considering the ease with which an alibi defense can be fabricated, the Court recognized that such discovery rules serve the prosecution's interest in protecting itself against an eleventh-hour defense, as well as the public interest in a full and truthful disclosure of critical facts.  *Id.* at 411-12.  The same can be said with respect to expert witnesses.

Moreover, the *Taylor* Court did not hold that the availability of alternative sanctions would preclude use of the preclusion sanction.  Far from it.  *Taylor* actually upheld preclusion even as it recognized that "a less drastic sanction is always available."  *Taylor*, 484 U.S. at 413.  The Court observed that "[p]rejudice to the prosecution could be minimized by granting a continuance or a mistrial to provide time for further investigation" and that "further violations can be deterred by disciplinary sanctions against the defendant or defense counsel."  *Ibid.*  But despite the availability of alternative sanctions, the *Taylor* Court upheld the exclusion of testimony as a means of enforcing the discovery rule.  The Court reasoned that use of alternative sanctions, although facially suitable in a particular case, "would be less effective than the preclusion sanction" and, in some cases, "would perpetuate rather than limit the prejudice to the State and the harm to the adversary process."  *Ibid.*  After all, the Court noted, "[o]ne of the purposes of the discovery rule itself is to minimize the risk that fabricated testimony will be believed."  *Ibid.*  In an observation no less apt in the instant case, the *Taylor* Court commented that it is "reasonable to presume that there is something suspect about a defense witness who is not identified until after the 11th hour has passed."  *Id.* at 414.

The *Taylor* court did not "draft a comprehensive set of standards to guide the exercise" of a trial court's discretion to sanction a party for failing to comply with discovery rules. *Id.* at 414. It did, however, identify several relevant factors to determine whether a discovery sanction would be constitutional. *Id.* at 414-15. They include a defendant's right to present exculpatory evidence, the integrity of the adversarial system, the interest in administering justice fairly and efficiently, potential prejudice to the truth-seeking role of criminal trials, the reasons for failure to comply with discovery rules, and the relative ease of compliance with the rules. *Id.* at 414-16.

The record in this case indicates that Butler was given several opportunities to tell the prosecutor what his firearms expert would say about the ballistics evidence. The last attempt can best be characterized as a nondisclosure. It did not indicate anything about actual evidence in the case, and it did not include the opinion that the expert would expect to testify about. Federal courts have excluded proposed expert witnesses for the defense from testifying for similar reasons. *See United States v. Anderson-Bagshaw*, 509 F. App'x 396, 410-11 (6th Cir. 2012) (holding that the federal district court did not abuse its discretion by excluding a psychologist's expert testimony about the defendant's mental health where the defendant inadequately described the psychologist's opinions in a written summary provided to government, and the summary inadequately described bases for the psychologist's opinions). In the absence of a disclosure, reasonable jurists would conclude that all of the concerns described by the *Taylor* court should be addressed by preclusion.

It is difficult to conclude that Butler was denied the right to present exculpatory evidence, as there is nothing in the record that tells us what his firearms expert would have said. He did not tell that to the prosecutor, or the state courts, or this Court. *See Butler*, 2015 WL 5057404, at * 5-6 (rejecting the petitioner's claim because he failed to make an offer of proof about Howard's proposed testimony). And there is no reason apparent from this record for his failure to do so.

- 11 -

The state courts reasonably applied governing federal law when it found that Butler's right to present a defense was not abridged.  He is not entitled to habeas relief on this claim.

<div align="center">C.</div>

In his third and seventh claims, Butler argues he was denied the effective assistance of trial counsel.  He contends that trial counsel performed deficiently by failing to create an adequate report or other summary of Steven Howard's proposed testimony after the trial judge ordered that such a report was necessary for Howard to testify, and that this failure deprived him of the right to present an expert witness.  He also argues that trial counsel was ineffective by failing to present an alibi defense and failing to call an expert in eyewitness identification.

The following general rules apply to ineffective assistance of counsel claims asserted in habeas petitions.  To start, the Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  When counsel is ineffective, that right is abridged.  *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970).

An ineffective assistance of counsel claim has two components.  A petitioner must show that counsel's performance was deficient, and that deficiency prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  An attorney's performance meets the first element when "counsel's representation [falls] below an objective standard of reasonableness."  *Id.* at 688.  The petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing

<div align="center">- 12 -</div>

professional norms." *Wiggins*, 539 U.S. at 521 (quoting *Strickland*, 466 U.S. at 688) (quotation marks omitted).

An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Unless a defendant demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Success on ineffective assistance of counsel claims is relatively rare because the *Strickland* standard is "'difficult to meet.'" *White*, 572 U.S. at 419 (quoting *Metrish v. Lancaster*, 569 U.S. 351, 357-58 (2013)). And under AEDPA, obtaining relief under *Strickland* is even more difficult because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (citations and quotation marks omitted). This doubly-deferential standard requires the Court to give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). "[T]he question is not whether counsel's actions were reasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

### 1.

The Michigan Court of Appeals rejected Butler's argument that trial counsel misperformed with respect to the expert witness report. The record did not disclose a reason for counsel's "vacillating positions regarding his intent to produce a report or other summery [sic] of Howard's

- 13 -

testimony." *Butler*, 2015 WL 5057404, at *6. But the court surmised that defense counsel's reluctance may have been because "an opinion rendered by Howard was unfavorable," and that counsel's ultimate ambiguous rendering was "possibly to avoid the disclosure that Howard's testimony may have buttressed the position of the prosecutor's expert." *Ibid.* If that were the reason, then the performance was reflective of "trial strategy." *Ibid.* The court also held that the petitioner failed to show prejudice, because he never said what Howard would have testified to had he been called as a witness. "Without any factual indication of the nature of Howard's proposed testimony, there is no basis for concluding that there is a reasonable probability that the outcome of the trial would have been different if Howard had testified." *Id.* at *7.

That reasoning faithfully applies federal constitutional law. As stated earlier, there is a strong presumption that counsel's performance was satisfactory. The petitioner has the burden of proving otherwise. And the petitioner fails in that effort when he produces a record where a reviewing court "may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive." *See Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)). The Michigan Court of Appeals gave a plausible explanation that defense counsel's ambiguous reporting was strategic. Where defense counsel's conduct challenged by the petitioner amounts to legitimate trial strategy, habeas courts will not find that counsel performed deficiently. *Robins v. Fortner*, 698 F.3d 317, 337-38 (6th Cir. 2012).

The state court's finding of no prejudice also is supported by the record. Even today, the substance of Howard's testimony remains a mystery. Conclusory allegations of prejudice without any evidentiary support cannot support a claim for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998). Butler's claim that the expert would have helped his defense cannot be

based on speculation.  *Keith v. Mitchell*, 455 F.3d 662, 672 (6th Cir. 2006).  By failing to attach any offer of proof or any affidavit sworn by Howard, Butler has not offered any evidence beyond his own assertions that Howard would have testified favorably for him.  Without such proof, the petitioner is unable to establish that he was prejudiced by counsel's failure to investigate or to call Howard to testify as an expert witness.  *Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007).

Finally, defense counsel thoroughly cross-examined and recross-examined the prosecution's firearms expert, Detective Sergeant Robert Rayer, about his findings.  ECF No. 22-27, PageID.2337-68, 2373-78.  The Supreme Court has held that: "in many instances cross-examination will be sufficient to expose defects in an expert's presentation."  *Richter*, 562 U.S. at 111.  Defense counsel's decision to cross-examine a prosecutor's expert witnesses on their findings, instead of calling an expert witness for the defense to challenge that expert's conclusions, has at times been held to be a reasonable trial strategy that defeats a habeas petitioner's ineffective assistance of trial counsel claim.  *See Tinsley v. Million*, 399 F.3d 796, 806 (6th Cir. 2005); *see also Jackson v. McQuiggin*, 553 F. App'x 575, 580-82 (6th Cir. 2014).  Counsel's decision to cross-examine the prosecution's firearms expert, in lieu of calling an expert of his own, is a reasonable trial strategy.

The petitioner has not shown ineffective assistance of counsel based on defense counsel's performance concerning the firearms expert witness.

2.

Butler's arguments that his trial counsel was ineffective by failing to call an alibi witness and an expert on identification were raised for the first time in a post-conviction motion.  The last reasoned opinion addressing those issues came from the trial court.  That court summarized the substance of the purported alibi testimony:

- 15 -

> Defendant has submitted his own affidavit and an affidavit of his cousin, Walter Williamson, to establish an alibi for the time of the shooting – between 3:00 and 4:00 p.m. on October 6, 2010. In his own affidavit, Defendant states that, on the day of the shooting, he left work at 2:36 p.m., stopped at a store to purchase groceries for his uncle, William Spencer, and then drove to Spencer's house with the groceries. He arrived at Spencer's house at approximately 3:30 p.m. and stayed there until 6:00 p.m. Defendant states that Spencer and Ann Morris, a woman who resided in the same apartment building as Spencer, could have corroborated his alibi but both Spencer and Morris are now deceased. Walter Williamson states in his affidavit that both Spencer and Morris told him before their deaths that Defendant was at their apartment building visiting Spencer from 3:30 p.m. to 6:00 p.m. on October 6, 2010.

*People v. Butler*, No. 11-237958-FC, * 4-5 (Oakland Cnty. Cir. Ct. July 24, 2017) (ECF No. 22-38, PageID.3325). The trial court found that the purported testimony was not credible, the state's evidence of guilt was strong and convincing, and the new evidence would not have changed the outcome. *Id.* at PageID.3325-26.

That decision did not misapply federal law. The court's credibility determination is supported by the record. First, Butler signed his affidavit on December 29, 2016. ECF No. 38, PageID.5179. Mr. Williamson signed his affidavit October 11, 2016. *Id.*, PageID.5182. Both affidavits were signed six years after the shooting, three years after Butler was convicted, and after his direct appeal became final in the state courts. The fact that both men executed their affidavits so long after the shooting and the trial calls into question their credibility. *See Ashmon v. Davis*, 508 F. App'x 486, 488 (6th Cir. 2012). Williamson never came forward in a timely manner when he alleged that he knew that Butler had been wrongly convicted, and there is no indication that he ever went to the police with his allegedly exculpatory information. Those lapses provide a reasonable basis to doubt his credibility.

Second, according to Williamson's affidavit, Mr. Spencer died in December 2011 and Ms. Morris passed away in April 2012. ECF No. 38, PageID.5182. Both died before Butler's first trial

- 16 -

in February 2013, which ended in a hung jury. ECF No. 38, PageID.5177. Butler and Williamson both suggest in their affidavits that counsel was ineffective because he failed to depose Mr. Spencer or Ms. Morris prior to their deaths to preserve their proposed alibi testimony. *Id.* PageID.5177, 5182. But neither affiant alleges any facts suggesting that Butler's attorney reasonably should have known that either witness would die prior to trial or even was aware of them at the time.

Third, Butler further alleged in his affidavit that defense counsel told him that he would make amends for not deposing Ms. Morris or Mr. Spencer by calling Williamson to testify as an alibi witness. Williamson, in fact, was subpoenaed for trial but counsel ultimately did not call him to testify. Williamson's proposed testimony, however, would have been inadmissible hearsay, because he could only testify about what Ms. Morris and Mr. Spencer allegedly told him. Because Williamson's proposed testimony was hearsay, counsel was not ineffective by not calling him as a defense witness. *See Ryder v. Kerns*, 335 F. App'x 529, 537 (6th Cir. 2009).

Fourth, Williamson is related to Butler. Because Williamson was a family member, defense counsel reasonably could have concluded that he would not have been a credible alibi witness. *See Yancey v. Haas*, 742 F. App'x 980, 983 (6th Cir. 2018); *Stadler v. Berghuis*, 483 F. App'x 173, 176-77 (6th Cir. 2012).

Fifth, Butler's proposed alibi could have been viewed by defense counsel as problematic. Butler and Williamson assert that Butler was on the east side of Detroit from 3:30 p.m. to 6:00 p.m. on the day of the murder, ECF No. 38, PageID.5176, 5181-82, and yet his cellular phone data shows that he pinged the tower behind the murder scene (and his home) more than 20 miles away in Southfield, Michigan at 5:36 p.m., ECF No. 22-28, PageID.2413-15, 2444, 2448-49. Counsel was not ineffective by not calling an alibi witness who would have discredited the alibi defense,

- 17 -

thus leading to the presumption that counsel's decision to omit an alibi defense was trial strategy. *See*, *e.g.*, *United States v. Foreman*, 323 F.3d 498, 503 (6th Cir. 2003).

Finally, the trial judge reasonably concluded that Butler was not prejudiced by counsel's failure to present an alibi defense in light of the overwhelming evidence of his guilt. The Sixth Circuit has several times held that a habeas petitioner was not prejudiced by an attorney's failure to pursue an alibi defense where there was compelling evidence of guilt. *Ballinger v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013); *Ashmon* , 508 F. App'x at 488, *Bray v. Cason*, 375 F. App'x 466, 470-71 (6th Cir. 2010); *Smith v. Crowley*, 36 F. App'x 754, 756 (6th Cir. 2002).

### 3.

Butler also contends that his trial attorney was ineffective by failing to retain an identification expert. He alleges that such an expert would have reviewed the surveillance footage and explained that it was not clear enough to identify anyone.

That argument is a non-starter. Butler has not identified a proposed expert who would have offered such testimony. That leaves the contention supported solely by speculation, which is insufficient to support relief. *Keith*, 455 F.3d at 672. Moreover, Butler was not personally identified on any of the surveillance footage. That evidence showed only the vehicle he was alleged to have been driving, which matched his wife's vehicle. A defense identification expert would not have assisted the defense on that score. Defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *Millender v. Adams*, 376 F.3d 520, 527 (6th Cir. 2004).

\* \* \* \* \*

Butler is not entitled to relief on his ineffective-assistance-of-counsel claims.

D.

Butler next argues that the prosecutor committed misconduct when he offered into evidence prior statements that Andrew Roberts made to witnesses Stacy Matthews and Ray Roberts as prior consistent statements to bolster Andrew Roberts' testimony. These witnesses testified that Andrew Roberts had related to them the confession by petitioner Butler that he had shot the victim and wanted to turn the gun over to Andrew Roberts. ECF No. 22-29, PageID.2742-47, 2761-62. These conversations purportedly took place within a month or so of Butler's statements to Andrew Roberts. The trial court allowed the evidence and the court of appeals affirmed, finding that the testimony amounted to prior consistent statements offered to rebut a recent motive to fabricate. *Butler*, 2015 WL 5057404, at *7-8. Butler now argues that the prosecutor committed misconduct by offering the evidence.

A prosecutor's alleged misconduct will require habeas corpus relief only when the conduct complained of "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Parker v. Matthews*, 567 U.S. 37, 45 (2012) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986), and calling *Darden* the "clearly established Federal law" on the issue). The *Parker* Court observed that "the *Darden* standard is a very general one," which permits state courts "more leeway . . . in reaching outcomes in case-by-case determinations[.]" *Id.* at 48 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). On habeas review, the AEDPA raises the bar even higher than the "high standard" set by *Darden. Halvorsen v. White*, 746 F. App'x 489, 499 (6th Cir. 2018) (citing *Darden*, 477 U.S. at 180). To obtain habeas relief, "[t]he misconduct must so clearly violate *Darden* that the state court's failure to identify it was not just erroneous, but 'objectively unreasonable.'" *Id.* at 497 (citing *Williams*, 529 U.S. at 409). *Darden* itself did not find unconstitutional a prosecutor's characterization of the defendant as an "animal" or his

- 19 -

expressed wish that he "could see [the defendant] with no face, blown away by a shotgun." *Darden*, 477 U.S. at 180, nn.11, 12. Even where prosecutors' conduct is so extreme as to be "universally condemned," the inquiry remains whether due process was denied. *Id.* at 181.

Here, the conduct challenged by the petitioner is the prosecutor's decision to offer prior statements of a key witness into evidence. However, the trial court allowed the evidence, and the appellate court affirmed that decision. "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). There is "no Supreme Court decision holding that the improper use of a witness's prior consistent statements violates the Constitution." *Drain v. Woods*, 902 F. Supp. 2d 1006, 1037 (E.D. Mich. 2012). Therefore, the prosecutor's introduction of Andrew Roberts' prior consistent statements to the two other witnesses did not deprive Butler of a fundamentally fair trial. He is not entitled to habeas relief on his fourth claim.

### E.

Butler next argues that the Michigan Court of Appeals should have allowed him to add a cellular-data claim on direct appeal after the briefs had already been submitted. Even if that decision may have been erroneous, it is of no moment here because the state supreme court allowed Butler to add the issue and then rejected the argument for lack of merit. Butler also was able to present the issue to the state courts in his second post-conviction motion for relief from judgment and to take that decision through the state appellate process.

Butler raises the denial of that motion as an issue here as a habeas claim. It does not help him. In *Carpenter v. United States*, 585 U.S. 296 (2018), the Supreme Court held that the acquisition of a person's cell-site location information is a search that generally requires the government to obtain a warrant supported by probable cause before obtaining such records. Butler

contends that the state violated his rights under the Fourth Amendment when it acquired the cell-site data that placed his phone in the vicinity around the time of the shooting.

This claim will not be addressed on the merits, because Butler cannot overcome the obstacle created by *Stone v. Powell*, in which the Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428 U.S. 465, 494 (1976). The Sixth Circuit employs a two-step analysis to determine whether a defendant was given a full and fair opportunity to litigate a Fourth Amendment claim in state court:

> First, the court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism.

*Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quotation marks omitted).

As mentioned, Butler presented his Fourth Amendment claim in his second post-conviction motion for relief from judgment before the trial court and the Michigan appellate courts. Because he was able to raise his Fourth Amendment claim in his post-conviction motion, the petitioner had a full and fair opportunity to raise this Fourth Amendment claim in the state courts and is thus not entitled to habeas relief. *Hurick v. Woods*, 672 F. App'x 520, 535 (6th Cir. 2016).

Butler also argues that trial counsel was ineffective by failing to object to the admission of the cellular location data and that appellate counsel was ineffective by failing to challenge the admissibility of this evidence on the petitioner's appeal of right. Neither of those arguments has merit. To prove that counsel performed deficiently by failing to litigate a Fourth Amendment claim, a defendant must also prove that his Fourth Amendment claim is meritorious and that there

is a reasonable probability that the verdict would have been different absent the excludable evidence, in order to demonstrate actual prejudice. *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). He cannot make that showing on this record.

First, the police in this case did obtain a search warrant to seize the cellular phone evidence. ECF No. 22-46, PageID.4476. Second, the Supreme Court did not decide the *Carpenter* case until 2018, well after Butler's trial ended in 2013 and after his direct appeal concluded in 2016. Defense counsel cannot be faulted for not anticipating a change in the law.

<div align="center">F.</div>

Last, Butler alleges that Andrew Roberts committed perjury at his trial.

A prosecutor may not knowingly present false evidence, *Giglio v. United States*, 405 U.S. 150, 153 (1972), or allow false evidence or testimony to go uncorrected, *Napue v. Illinois*, 360 U.S. 264, 269 (1959). But Butler does not develop this argument by explaining how Roberts's testimony was false. Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir. 1971) (per curiam).

Butler has the burden to show that the witness's statement was "indisputably false," rather than misleading. *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000). He presents no evidence that Roberts testified falsely at his trial. He points only to inconsistencies and discrepancies in Roberts's testimony. Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). The fact that a witness contradicts himself or changes his story also does not establish perjury. *Malcum v. Burt*, 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003) (citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)).

<div align="center">- 22 -</div>

Moreover, even if Roberts testified falsely, Butler is still not entitled to habeas relief on his perjury claim, because he has failed to show that the prosecutor knew that Roberts testified falsely. *Rosencrantz v. Lafler*, 568 F.3d 577, 587 (6th Cir. 2009).

<div align="center">III.</div>

None of the petitioner's claims presents a basis to issue a writ of habeas corpus under 28 U.S.C. § 2254(d). The state courts' decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. The petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition and amended petition for a writ of habeas corpus are **DENIED**.

<div style="margin-left: 50%;">

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

</div>

Dated:   July 22, 2024

<div align="center">- 23 -</div>